IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MARY MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:20-cv-00003 |
| ) | |
| MEDIKO, INC., ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Mary Miller worked as a pharmacy nurse for Mediko, Inc. at Augusta Correctional Center (ACC). She alleges claims against her former employer for sexual discrimination, harassment (hostile work environment), and retaliatory/constructive discharge in violation of Title VII. On September 3, 2021, the court granted Mediko's motion for summary judgment as to the retaliation claim and denied the motion as to the harassment claim. (Dkt. Nos. 68, 69.) Mediko moves to reconsider the court's denial of summary judgment on the harassment claim. (Dkt. No. 70.) The court held a hearing on this motion, (Dkt. No. 75),[1] and trial is scheduled to begin on July 26, 2022.

For the reasons stated below, Mediko's motion to reconsider is granted in part and denied in part.

---

[1] After the hearing, Miller submitted a letter discussing supplemental authority. (Dkt. No. 76.) Mediko responded, noting that Miller did not request leave to submit supplemental authority. (Dkt. No. 77.) Miller then moved for leave to file, which was granted by Judge Hoppe. (Dkt. No. 79.) The court has considered Miller's discussion of supplemental authority and Mediko's response.

I.  BACKGROUND

The court denied summary judgment on Miller's hostile work environment claim after finding issues of fact as to whether the alleged conduct was severe or pervasive and whether the conduct was imputable to Mediko.  Central to the court's analysis was the conduct of Walter Couser, a nurse who worked with Miller at Mediko.

> The court agrees that much of Couser's behavior can be described as crude and "boorish."  However, Couser's behavior was also sexually explicit, and it included "personal gender-based remarks," [*EEOC v.*] *Fairbrook* [*Med. Clinic, P.A.*], 609 F.3d 320, 328 (4th Cir, 2010), such as Couser's comments on Miller's breast size and invitations to join him in a hotel room.  More importantly, Couser's conduct was physically threatening.  Couser told Miller he would "beat her like a man," that she would "end up in the hospital or in the grave," and that he could "hurt her very badly," then touched her shoulder to emphasize the point.  This abusive behavior, as alleged, is worse than boorish.  And even though Couser was not in a position of authority over Miller, the age and size discrepancy between Couser and Miller heightened the threat to Miller.  *See Ziskie* [*v. Mineta*], 547 F.3d 220, 227 (4th Cir. 2008) (noting that hostile work environment cases that have succeeded in this circuit "have often involved a disparity of power between the harasser and the victim").  Again, the court recognizes that Couser was a co-worker and not in a position of power as to the terms and conditions of Miller's employment.  However, Couser's age, lengthy experience as a nurse, and apparent rapport with supervisors such as [Derinda] Dameron, [Director of Nursing,] combined with Miller's youth and lack of experience, suggest an imbalance of power between Couser and Miller.  In these circumstances, there is an issue of fact as to whether Miller perceived, and a reasonable person would perceive, the environment to be abusive and hostile.

2021 WL 4026085, at *8.  Regarding imputability, the court stated:

> Mediko argues that it was not negligent because Miller had multiple avenues to lodge complaints about harassment, pursuant to Mediko's anti-harassment and the DOC's EEO Policy, and she failed to take advantage of these avenues, at least initially.  Moreover, when Miller did report misconduct, the process worked, as Couser was issued a warning and ultimately was terminated.  However, Miller has testified that, prior to Couser's warning and termination in 2019, she reported issues to [April] Hanley[, Health

2

> Service Administrator,] and Dameron and her reports fell on deaf ears and were not investigated. According to Miller, she was told by Hanley and Dameron that her concerns were not important and that she just needed to deal with this type of work environment. (*See* Miller Dep. 168 (testifying about conversations with Hanley concerning "how I looked, how I dressed, the comments about Walter Couser making and I needed to shrug them off because they knew that that's how men in—or they knew it was my first go-round in prison, and that's just how men acted").) This testimony, along with other evidence in this case, such as Couser's testimony about the conduct of nurses, suggests that there was a permissive environment toward this type of conduct. Miller also testified that she was trying to get contact information from Hanley and Dameron, so she could address her complaints about Couser from "the winter of 2018 to the time I left." (Miller Dep. 243–44 ("I was trying to get information from April Hanley and Derinda Dameron as to who to contact next. They were very adamant on chain of command."); *id.* at 246 ("Again, as I stated before, that's what I was trying to ask of Derinda Dameron and April Hanley, who I was supposed to go to if they could not handle the issue at hand at the facility.").) This evidence further demonstrates that Miller's direct supervisors were aware of the alleged harassment in 2018 but did not take action until later in 2019. Therefore, the court finds that there is an issue of fact as to whether Mediko's conduct towards harassment in its workplace was negligent, and as a result, whether Couser's harassment can be imputed to Mediko.

2021 WL 4026085, at *9.

## II. ANALYSIS

### A. Standard of Review

Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Fed. R. Civ. P. 54(b). Such motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). "In considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has obviously misapprehended a party's position or the facts or

3

applicable law." *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 742–43 (D. Md. 2013).

## B. Imputable to Employer

Mediko argues that the court erred in ruling that the harassment can be imputed to Mediko because the court did not distinguish between conduct reported and *responded to* by Mediko and conduct reported and *not responded to* by Mediko. Specifically, Mediko acknowledges (but disputes) Miller's allegations that she reported misconduct in the winter of 2018 through April 2019, and that Mediko did not address that conduct. However, Mediko did address Couser's misconduct in May 2019, providing a written reprimand and counseling, and then again in June 2019, when Couser was fired. Thus, Mediko argues that Couser's May and June 2019 conduct is not actionable because Mediko took "prompt and adequate action to stop [the harassment]." *Lorenz v. Fed. Express Corp.*, Civil Action No. 7:10-cv-00487, 2012 WL 4459570, at *8 (W.D. Va. Aug. 17, 2012) (citing *Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir. 1999)).

In support, Mediko cites *EEOC v. Xerxes Corp.*, 639 F.3d 658 (4th Cir. 2011). In *Xerxes*, the court held that there was a genuine issue of material fact "as to whether Xerxes had notice of the alleged racial slurs and pranks in the workplace prior to February 2006, but failed to respond with any remedial action." *Id.* at 670. But "[w]ith regard to the incidents of racial harassment that were reported on February 3, 2006 and beyond," the court held that "Xerxes' response to each reported incident was reasonably calculated to end the harassment and, therefore, reasonable as a matter of law." *Id.* at 671. Therefore, the court affirmed the grant of summary judgment as to incidents of harassment after a specific date but vacated the grant of summary judgment as to incidents of harassment before that date. Mediko seeks a similar ruling: a

distinction between the conduct that occurred in May and June 2019, for which Mediko cannot be held liable because of its prompt and adequate action to stop the harassment, and conduct that occurred previously, for which Mediko could be held liable on the assumption that the conduct was severe or pervasive.

Miller argues that Mediko's motion to reconsider presents "nothing new" and notes that Mediko cited *Xerxes* in its opening and reply briefs. However, the specific holding of *Xerxes* that distinguished between different periods of time of harassment was not discussed or analyzed by either party. The parties' arguments at summary judgment were not framed in the terms that are now presented to the court. This is likely because Mediko argued primarily that none of the alleged harassment can be considered severe or pervasive. Ultimately, Miller's attempts to distinguish *Xerxes* are unavailing. The court agrees that Mediko cannot be held liable for the conduct of Couser occurring in May and June of 2019 because of Mediko's prompt remedial action.[2]

### C. Severe or Pervasive

Having found that Mediko cannot be held liable for Couser's conduct occurring in May and June 2019, Mediko renews its argument that the alleged harassment cannot be considered severe or pervasive, especially now that Couser's conduct in May and June 2019 conduct is excised from consideration. Courts consider the totality of the circumstances faced by the plaintiff including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

---

[2] To be clear, the court's holding applies only to the alleged harassment by Walter Couser in May and June 2019, not any other conduct that may be part of Miller's harassment claim.

The court's analysis in its summary judgment opinion noted with particular concern the incident that occurred in June 2019—Couser's physically threatening comment to Miller that he would "beat her like a man," that she would "end up in the hospital or in the grave," and that he could "hurt her very badly," followed by Couser touching Miller's shoulder to emphasize the point. Removing this incident and the balance of Couser's conduct in May and June 2019 from consideration, *see* 2021 WL 4026085, at **3–4, what remains are comments Couser made about Miller's breast size, Miller's attractiveness, invitations for Miller to stay with Couser in a hotel, and various other sexually-tinged remarks (stating that he needs a "young slut with daddy issues," "what daddy Couser wants, daddy Couser gets," if he were "30 years younger, [Miller] would be his"). As the court noted, many of Couser's comments were "sexually explicit" and "personal gender-based remarks." 2021 WL 4026085, at *8 (citing *Fairbrook*, 609 F.3d at 328). The comments can also be viewed as "highly personalized comments designed to demean and humiliate" Miller, *Fairbrook*, 609 F.3d at 328. Further, by inviting Miller to spend time with him in a hotel room, Couser at least implicitly proposed that they engage in sexual activity. *Id.* at 330 (finding that a reasonable jury could interpret asking plaintiff "if she would let him pump her breasts" as a suggestion that they "engage in sexual activity"). Finally, Mediko characterizes Couser's behavior between the winter of 2018 and April 2019, five months where Miller interacted with Couser four times a month during shift change, as a "handful of isolated and thus non-actionable incidents." *Id.* However, the summary judgment evidence shows that Couser made comments comparing the breast sizes of Miller and another nurse, Sarah Fitzgerald, at least five times, and he asked Miller to stay in his hotel room "on multiple occasions." 2021 WL 4026085, at *2. Thus, as in *Fairbrook*, a jury could find that the harassment "was at least a regular occurrence." 609 F.3d at 330.

## III.  CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Mediko's motion for reconsideration (Dkt. No. 70) is GRANTED IN PART and DENIED IN PART.  Mediko's motion is GRANTED to the extent that Mediko cannot be held liable for the conduct of its former employee, Nurse Walter Couser, that occurred in May and June 2019.  In all other respects, Mediko's motion for reconsideration is DENIED.

Entered: March 31, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge